■ In the Matter of ALBERT MARTIN COHEN, Petitioner. DENIS M. HURLEY, Respondent.— This is an application for reinstatement as a member of the Bar. On December 31, 1959, in a prior proceeding, this court had disbarred the applicant by reason of his refusal, before the Additional Special Term appointed by this court to conduct a Judicial Inquiry into unethical practices, to answer pertinent questions in reliance on his constitutional privilege against self incrimination (*Matter of Cohen*, 9 A D 2d 436, affd. 7 N Y 2d 488, affd. 366 U .S. 117). We stayed the operation of the disbarment order, however, pending the determination of the applicant's appeal to the Court of Appeals. Thereafter, the operation of the disbarment order was again stayed pending the decision and mandate of the Supreme Court of the United States. On May 26, 1961, that mandate was issued, thereby ending the stay of the disbarment order. The applicant was then granted permission by this court to return to the said Special Term where, between September, 1961 and March, 1962, the Justice presiding heard the applicant's testimony as well as that of several independent witnesses. Thereafter, the applicant made this application to be reinstated as a member of the Bar. In opposition, the objectant (who was the petitioner in the prior disbarment proceeding) filed 15 specific charges of misconduct against the applicant. The application, including the charges, was referred to the Hon. PETER M. DALY, Justice of the Supreme Court, for hearing and report. Mr. Justice DALY, after having conducted hearings, has filed his report in which he sustained 12 *in toto* and 1 in part of the 15 charges made. The charges sustained included the following: (1) That the applicant was lacking in candor in his testimony at the Additional Special Term — (a) in respect of a partnership relationship; (b) concerning his nonproduction of certain financial records; and (c) concerning his knowledge of dealings with a solicitor of negligence cases. (2) That the applicant paid laymen for referral of negligence cases to him. (3) That the applicant advanced moneys to clients in matters where his fee was contingent upon recovery. (4) That the applicant commingled his clients' moneys with his own. (5) That he failed to keep and preserve proper books and financial records. (6) That he paid lay public adjusters or "ten percenters" for aiding in the settlement of his negligence cases. (7) That he advanced moneys to attorneys in consideration of their referral of negligence cases to him. (8) That he participated in a scheme designed to obtain negligence cases by the use of information derived from hospital lien books and filed notes of issue. (9) That he failed to file partnership income tax returns, and failed in his returns to report his correct net income. (10) That he participated in a scheme which violated the proscription against representing conflicting interests. (11) That he filed statements of retainer containing misrepresentations. While sustaining these charges, the recommendation of Mr. Justice DALY was to grant the application for reinstatement. The applicant now moves to confirm the report. We agree with the findings made by Mr. Justice DALY in which he sustained the charges of professional misconduct, and to this extent the report is confirmed. The nature of the charges, however, is so serious as to warrant the denial of the application on the ground that the applicant is not possessed of the character and fitness required for a member of the Bar. Accordingly the application for reinstatement is denied. Brennan, Hill, Rabin and Hopkins, JJ., concur; Kleinfeld, Acting P. J., dissents with the following memorandum and votes to confirm the report of Mr. Justice DALY except as to its findings of guilt on Specifications 1, 6 and 10, which dealt with lack of candor in the applicant's

testimony before the Additional Special Term: It is uncontradicted that the applicant suffered a serious mental breakdown in 1955 and thereafter underwent prolonged electric shock treatments and psychotherapy which, says the applicant, greatly impaired his memory. And the applicant says it was this impairment of memory, not lack of candor or willingness to co-operate, that resulted in his somewhat contradictory and seemingly evasive testimony concerning the matters involved in Specifications 1, 6 and 10. In my opinion, the applicant's explanation is wholly believable, since (a) his illness and treatments are undisputed; (b) the record clearly shows that he was frank and co-operative as to the other matters under investigation; and (c) the overwhelming bulk of the charges against him were established out of his own mouth and solely on the basis of his voluntary, candid revelation of the relevant facts. If the applicant had intended to be unco-operative and evasive, he would not have voluntarily disclosed all the facts which supported the other charges. On this record, then, I think the applicant's explanation of the inconsistencies in his testimony concerning the matters involved in Specifications 1, 6 and 10 should have been accepted, and the charges under those specifications should have been dismissed (cf. *Matter of Silver* v. *Turchin,* 10 N. Y. 2d 959). Apart from the foregoing, it seems to me that in this proceeding for reinstatement the only issues are (a) whether the applicant now has the requisite character and fitness to be a member of the Bar; and (b) whether he has been sufficiently disciplined for the offenses he committed prior to his disbarment. With respect to his *present* character and fitness, many eminent and distinguished witnesses testified that the applicant now has the requisite character and fitness. There was no proof to the contrary, either direct or inferential. Mr. Justice DALY, a long-experienced Trial Judge who saw all the witnesses and the applicant, and who heard their testimony from their own mouths, was convinced on that point. He found that the applicant was never dishonest with his clients; that he was "repentant in the extreme for his professional transgressions, in most cases candidly admitted"; and that "he presently possesses the character and fitness for an attorney." On this record, any conclusion to the contrary would be arbitrary and insupportable. More, it would be in effect a denial of the ethical and sociological principle that man is reformable, as well as the religious concept that man is capable of salvation. With respect to the measure of discipline, it is true that the applicant has been technically disbarred for only one and one-half years; but in practical effect, his disbarment has lasted three years. Justice DALY found, quite properly, that he has already been punished enough for his professional misconduct (cf. *Sacher* v. *Association of the Bar,* 347 U. S. 388; *In re Disbarment of Isserman,* 348 U. S. 1; dissent of CLARK, J., in *Matter of Sacher,* 206 F. 2d 358; concerning the offenses committed by *Sacher* and *Isserman,* see: 182 F. 2d 416, 431, 454). One final point is worth noting. The applicant was disbarred not for the professional misconduct found by Justice DALY, but in effect for testing in the courts (concededly in good faith) the right of an attorney to plead the Fifth Amendment when questioned in connection with an investigation into ambulance chasing. By a 5-to-4 vote, the United States Supreme Court held that this was "refusal to cooperate" with an inquiry into unethical practices which rendered him subject to professional discipline. In view of that decision, the applicant thereafter testified before the Inquiry and himself voluntarily supplied the bulk of the facts supporting the present charges of professional misconduct. In other words, the applicant has "convicted" himself because of the testimonial compulsion inherent in the Supreme Court's decision. If the Supreme Court had sustained his right to plead the Fifth Amendment without incurring professional discipline, it is likely that the present charges of misconduct could never have been proved,

and the applicant today would be a member of the Bar in good standing. All this merits consideration because of the rationale of *Mapp* v. *Ohio* (367 U. S. 643, 656–657), and because it is quite possible that the applicant's right to plead the Fifth Amendment would have been sustained by the Supreme Court were the question now to come before that court *de novo* (see *NAACP* v. *Button,* 371 U. S. 415). It should also be noted, in this connection, that two of the five Supreme Court Justices who sustained the applicant's disbarment for pleading the Fifth Amendment are no longer on the Bench, so it well may be that the present Bench would now produce a majority opposing that holding. In view of all the circumstances, it is my opinion that the charges of lack of candor were not sustained; that the record establishes that the applicant presently has the requisite character and fitness to be a member of the Bar; and that the discipline already suffered by him has been amply sufficient for his previous professional misconduct. Hence, I vote to confirm Mr. Justice DALY's report, except as to Specifications 1, 6 and 10, and to confirm his recommendation that the application for reinstatement be granted.